SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS** 2018 JAN 25  AM 9: 47
**DALLAS DIVISION**

DEPUTY CLERK _____

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| ARISEBANK, | § Civil Action No.: |
| JARED RICE SR., and | § | |
| STANLEY FORD, | § FILED UNDER SEAL |
| | § | |
| Defendants. | § | |
| | § **3 - 18 C V - 1 8 6 - M** |

**PLAINTIFF SEC'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, ASSET FREEZE, APPOINTMENT OF A RECEIVER, DOCUMENT PRESERVATION ORDER, ORDER TO MAKE ACCOUNTING AND OTHER EMERGENCY AND ANCILLARY RELIEF**

January 25, 2018

Respectfully submitted,

CHRIS DAVIS
Texas Bar No. 24050483
davisca@sec.gov
TIMOTHY L. EVANS
evanstim@sec.gov
B. DAVID FRASER
Texas Bar No. 24012654
fraserb@sec.gov
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Ph: 817-978-3821
Fax: 917-978-4927

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ....................................................................................iii-v

I.      FACTUAL SUMMARY ...................................................................................1

  A.  The Defendants Are Offering Unregistered Securities Through An
      "Initial Coin Offering"....................................................................................1

  B.  The Defendants Are Violating The Antifraud Provisions of the Federal Securities Laws
      By Making Material Misrepresentations and Omissions to Investors .................................3

II. ARGUMENTS AND AUTHORITIES...................................................................5

  A.  The Court Should Issue an *Ex Parte* Restraining Order, Preliminary Injunction, and Other
      Equitable Relief in Order to Halt Defendants' Ongoing Fraud, Maintain the Status Quo,
      and Protect Investors From Further Harm .........................................................5

      1.    A Special Standard Applies to SEC Requests for Injunctions and Asset
            Freezes ...........................................................................................5

  B.  The SEC is Likely to Succeed on the Merits of Its Case ......................................7

      1.    The Defendants are Illegally Offering and Selling Unregistered Securities......7

      2.    The Defendants are Conducting a Fraudulent Securities Offering....................9

      3.    The Defendants Misconduct is Ongoing and Will Continue...........................12

  C.  The Court Should Appoint a Receiver Over AriseBank....................................13

  D.  The Court Should Issue an Order Freezing and Repatriating the Defendants' Assets,
      Requiring Document Preservation, Requiring Sworn Accountings, Permitting Alternative
      Service, Permitting Expedited Discovery, and Requiring Rice and Ford to Surrender their
      Passports ..........................................................................................14

  E.  *Ex Parte* Treatment is Necessary...................................................................16

III. CONCLUSION.................................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aaron v. SEC,*
    446 U.S. 680 (1980) ............................................................................................ 10

*Broad v. Rockwell Int'l Corp.,*
    642 F.2d 929 (5th Cir. 1981) ............................................................................ 10

*Bookout v. Atlas Fin. Corp.,*
    395 F. Supp. 1338 (N.D. Ga. 1974), aff'd, 514 F.2d 757 (5th Cir. 1975) ..................... 13

*Commodity Futures Trading Com. v. Muller,*
    570 F.2d 1296 (5th Cir. 1978) ........................................................................ 14, 15

*Hecht v. Bowles,*
    321 U.S. 321, 331 (1944) ..................................................................................... 5

*Janus Capital Grp., Inc. v. First Derivative Traders,*
    564 U.S. 135 (2011) ...................................................................................... 11, 12

*Long v. Shultz Cattle Company, Inc.,*
    881 F.2d 129 (5th Cir. 1989) ............................................................................... 8

*SEC v. Blatt,*
    583 F.2d 1325, 1335-1336 (5th Cir. 1978) ........................................................ 5, 14

*SEC v. Cavanagh,*
    1 F. Supp. 2d 337 (S.D.N.Y.), aff'd, 155 F.3d 129 (2d Cir. 1998) ................................ 8

*SEC v. Cavanagh,*
    155 F.3d 129 (2d Cir. 1998) ................................................................................ 5

*SEC v. Chinese Consol. Benev. Ass'n,*
    120 F.2d 738, 741 (2d Cir.1941) ......................................................................... 9

*SEC v. Edwards,*
    540 U.S. 389 (2004) ........................................................................................... 7

*SEC v. First Fin. Group of Tex.*
    645 F.2d 429 (5th Cir. 1981) .......................................................................... 6, 13

*SEC v. Glenn W. Turner Enterprises, Inc.,*
    474 F.2d 476 (9th Cir. 1973) ............................................................................... 8

*SEC v. Gann,*
    565 F.3d 932 (5th Cir. 2009) ............................................................................. 10

*SEC v. Grossman,*
    887 F. Supp. 649 (S.D.N.Y. 1995) ..................................................................... 14

*SEC v. Helms, et al*,
    2015 WL 5010298, *14-15 (W.D. Tex. Aug. 212015) (W.D. Tex. Aug. 21, 2015) ...................... 10

*SEC v. Keller Corp.*,
    323 F.2d 397 (7th Cir. Ind. 1963) ..................................................................................... 6

*SEC v. Koscot Interplanetary, Inc.*,
    497 F.2d 473 (5th Cir. 1974) ............................................................................................ 8

*SEC v. Manor Nursing Centers, Inc.*,
    458 F.2d 1082, 1089, n.3 (2d Cir. 1972) ................................................................. 10, 14

*SEC v. Mgmt. Dynamics, Inc.*,
    515 F.2d at 808-809 ......................................................................................................... 5

*SEC v. Murphy*,
    626 F.2d 633 (9th Cir. 1980) .......................................................................................... 13

*SEC v. Savoy Industries, Inc.*,
    587 F.2d 1149 (D.C. Cir. 1978) ..................................................................................... 13

*SEC v. R. J. Allen & Assocs., Inc.*,
    386 F. Supp. 866 (S.D. Fla. 1974) ................................................................................. 15

*SEC v. Resource Development Intern. LLC*,
    160 Fed.Appx. 368 (5th Cir. 2005) ............................................................................... 15

*SEC v. Seghers*,
    298 Fed. Appx. 319 (5th Cir. 2008) .............................................................................. 10

*SEC v. Shavers*,
    No. 4:13-CV-416, 2014 WL 4652121 (E.D. Tex. Sept. 18, 2014) ................................... 7

*SEC v. Tecumseh Holding Corp.*,
    2009 WL 4975263, *3 (S.D.N.Y. Dec. 22, 2009) ........................................................... 9

*SEC v. Tropikgadget FZE*,
    2017 U.S. Dist. LEXIS 25495 (D. Mass. Feb. 23, 2017) ................................................ 9

*SEC v. Unifund Sal*,
    910 F.2d 1028 (2nd Cir. 1990) ................................................................................. 14, 15

*SEC v. United Fin. Group, Inc.*,
    474 F.2d 354 (9th Cir. 1973) ........................................................................................ 5, 6

*SEC v. Vaskevitch*,
    657 F. Supp. 312 (S.D.N.Y. 1987) ................................................................................. 14

*SEC v. W.J. Howey Co.*,
    328 U.S. 293 (1946) ..................................................................................................... 7, 8

*SEC v. Zale Corp.*,
    650 F.2d 718 (5th Cir. 1981) ........................................................................................... 6

*Southland Sec. Corp. v. INSpire Ins. Solution, Inc.,*
    365 F.3d 353 (5th Cir. 2004) ........................................................................ 10

*United Hous. Found., Inc. v. Forman,*
    421 U.S. 837 (1975) ..................................................................................... 7

*U.S. v. Cannistraro,*
    694 F. Supp. 62 (D.N.J. 1988), aff'd in part, vacated in part on other grounds, 871 F.2d 1210 (3d Cir. 1989) ....................................................................................................... 14

*United States v. Chiaradio,*
    684 F.3d 265, 281 (1st Cir. 2012) ................................................................. 9

*Uselton v. Commercial Lovelace Motor Freight, Inc.,*
    940 F.2d 564 (10th Cir. 1991) ...................................................................... 8

*Williamson v. Tucker,*
    645 F.2d 404 (5th Cir. 1981) ....................................................................... 8

## FEDERAL STATUTES

Section 2(a)(1) of the Securities Act of 1933
    [15 U.S.C. § 77b(a)(1)] ................................................................................ 7
Sections 5(a) of the Securities Act of 1933
    [15 U.S.C. § 77e(a)] ................................................................................. 8, 9
Sections 5(c) of the Securities Act of 1933
    [15 U.S.C. § 77e(c)] ................................................................................. 8, 9
Section 17(a)(2) of the Securities Act of 1933
    [15 U.S.C. § 77q(a)] ................................................................................ 9, 10
Section 20(b) of the Securities Act of 1933
    [15 U.S.C. § 77t(b)] ............................................................................. 5, 6, 15
Section 3(a)(10) of the Securities Exchange Act of 1934
    [15 U.S.C. § 78c(a)(10)] .............................................................................. 7
Section 10(b) of the Securities Exchange Act of 1934
    [15 U.S.C. § 78j(b)] ................................................................................. 9, 10
Section 21(d) of the Securities Exchange Act of 1934
    [15 U.S.C. § 78u(d)] ........................................................................... 5, 6, 15
Rule 10b-5 of the Securities Exchange Act of 1934
    [17 C.F.R. § 240.10b-5(b)] ...................................................................... 9, 10

*SEC v. AriseBank, et al.*
Brief in Support of Motion for TRO, Asset Freeze, and Other Relief
    Page v

The Court should issue an emergency Temporary Restraining Order—along with other emergency relief—to stop an ongoing fraud that is being carried out by Defendants Jared Rice Sr. and Stanley Ford through Defendant AriseBank.   As shown in the attached evidentiary appendix, the Defendants are illegally selling unregistered securities under false pretenses. Consequently, the Court should grant the requested relief in order to put an immediate stop to this illegal conduct and to preserve assets for defrauded investors.

I.   **FACTUAL SUMMARY**

A.   THE DEFENDANTS ARE OFFERING UNREGISTERED SECURITIES THROUGH AN "INITIAL COIN OFFERING."

AriseBank is an unincorporated entity with its principal place of business in Dallas, Texas.[1]  App. at 8.  It also claims to have an office in Dubai.  App. at 9.  Defendant Jared Rice Sr. is AriseBank's co-founder and CEO.  App. at 28.  Defendant Stanley Ford is the other co-founder and Chief Operating Officer ("COO").   *Id.*   In these roles, Rice and Ford direct AriseBank's activities.  App. at 22.  For instance, AriseBank's marketing documents claim that Rice "built the entire Arise concept.  From the bank to the blockchain."  App. at 119. They also claim that Rice and Ford are part of "The Brains" behind AriseBank—describing them as "futurists who envisioned the entire Arise-Bank and AriseCoin idea."  App. at 121.

AriseBank offers investors the ability to buy a security called AriseCoin.[2]  App. at 34. AriseCoins purportedly allow investors to earn returns by sharing in the revenue earned by AriseBank and by sharing in free AriseCoins.  App. at 149. The AriseCoins can be bought with either U.S. dollars or using various types of virtual currencies.  App. at 147.  On the AriseBank

---

[1] AriseBank has also used the trade names AriseBank Ltd and AriseBank Foundation, LLC.  App. at 7.

[2] In an October 3, 2017 post on its Facebook page, AriseBank—while claiming that digital assets like AriseCoins are not securities (no doubt in an attempt to dodge U.S. regulators)—notes that "digital assets increase and decrease in value based on the company they represent, just like any Private stock."  There is no doubt that stocks are securities.  App. at 130.

website, AriseBank claims that it will sell up to 833.33 million AriseCoins and reserve 133.33 million AriseCoins "to circulate to all AriseBank customers evenly, based on the gross daily gains of AriseBank customers" from its artificial intelligence arbitrage program.  App. at 148. AriseBank claims to charge a 1% "broker fee" on profits that AriseBank account holders earn through the arbitrage system.  App. at 64.  The broker fees are then purportedly shared with AriseCoin investors. App. at 149.

From November 2017 to today, Arise Coins have been marketed to the public in an Initial Coin Offering ("ICO").  App. at 146-47.  They are being marketed using internet websites, Whitepaper offering documents, press releases, social media accounts, and chat services.  App. at 2, ¶ 4 (*see also* accompanying exhibits).  AriseBank claims that it has raised at least $600 million to date in the ICO—and intends to raise $1 billion.  App. at 159.

AriseBank advisor and spokesperson Eddy Taylor has generally claimed the company is "federally compliant."  App. at 164.  However, AriseBank has not registered any securities with the SEC, as required by the federal securities laws.  App. at 261-68.  Nor has it filed any Forms D claiming an exemption from registration.  *Id.*  Instead, AriseBank believes it is not subject to regulation by the SEC and, as Rice has declared, the Defendants are "geared up for the coming fight with the SEC."  App. at 132.

In addition, on January 5, 2018, the Texas Department of Banking issued a Cease-and-Desist Order (the "C&D Order") related to AriseBank.  App. at 168-72.  The C&D Order states that AriseBank is not associated with any known financial institution chartered by a state or federal regulatory agency.  *Id.*  It further states that AriseBank is not authorized to engage in the business of banking in Texas. *Id.*

Despite the C&D Order and despite not having its securities registered with the SEC,

AriseBank continues to offer its unregistered securities to the public.

**B.     THE DEFENDANTS ARE VIOLATING THE ANTIFRAUD PROVISIONS OF THE FEDERAL SECURITIES LAWS BY MAKING MATERIAL MISREPRESENTATIONS AND OMISSIONS TO INVESTORS.**

The Defendants are fraudulently marketing the AriseCoin securities using a number of material misstatements and omissions. Specifically:

(1) The Defendants claim that AriseBank has agreed to purchase an FDIC-insured bank—giving AriseBank "full financial capabilities of traditional banking united with the power and platform of real-time cryptobanking." App. at 163. This claim is false—as detailed in documents from the FDIC, which confirm that AriseBank is not insured and the bank it claims to have purchased is not registered with the FDIC.[3] App. at 173-74.

(2) The Defendants claim that AriseBank offers an AriseBank-branded VISA credit card that allows AriseBank customers to pay for goods and services using any of 700 different virtual currencies. App. at 92-94. They claim that this service is "Powered by Marqeta (sic) – AriseBank utilizes Marqeta's (sic) world renowned VISA API, allowing us to do things that most crypto wallets who have VISA cards are unable to do." *Id.* AriseBank's website also lists Marqeta as a "partner." App. at 175-76. And on October 4, 2017, AriseBank announced on its Facebook page: "Our new partnership with VISA and Marqeta has enabled the AriseCard and the entire AriseCard platform to change the very foundation of how we spend our money. From virtual to physical cards, the AriseCard platform is directly compatible with ...over 700 cryptocurrencies." App. at 207. All of

---

[3] In addition, Rice—as a convicted felon—is prohibited from owning or controlling an FDIC-insured bank without the prior written consent of the FDIC. *See* Section 19 of the Federal Deposit Insurance Act [12 U.S.C. 1829].

these claims were false.  AriseBank has no relationship with Marqeta and offers none of these claimed products or services.  App. at 217-40, 269-83.

(3) Finally, the Defendants tout the credentials and credibility of AriseBank's leadership team—including Rice.  In addition to describing him as a "futurist[]" who envisioned the entire Arise-Bank and AriseCoin idea," they also claim that Rice has made "[y]ears of community contributions [. . .] contributing code under the MIT license" and that he has performed "[years of community work [. . .] working in the communities he made it out of and giv[ing] back frequently with projects like Dotemy."  App. at 119.  These statements are materially false and/or incomplete.  Rice has an extensive criminal history that includes charges for: (1) theft of $1,500-$20,000, (2) tampering with government records,[4] (3) harassment, and (4) bond forfeiture.[5]  App. at 241-52.

As detailed above and in the appendix, these claims appear throughout a variety of publicly-available offering documents, including:

- a "Developer Whitepaper 2017," which is "By: Jared Rice, Sr." and is introduced by a "Letter From The Founders"—which is signed by "Jared Rice and Stanley Ford, Co-Founders, Arise Bank";

---

[4] He is currently on probation for the theft and tampering with government records charges—each of which is felony.  App. at 242-43, 248.

[5] Kelvin Spencer, who is not a Defendant here but who is listed in marketing documents as AriseBank's President, also has a lengthy criminal history—including a felony robbery conviction for which he served five years and was fined $250,000.  App. at 253-60.

- a "Whitepaper 2017," which is signed by "Jared Rice Sr., Co-Founder/CEO of AriseBank" and lists Ford as "Co-Founder/COO";

- a December 16, 2017 press release issued by AriseBank that contains a quote from Rice;

- a January 18, 2018 press release issued by AriseBank that contains a quote from Rice and lists Rice and Ford as founders of AriseBank; and

- AriseBank's public websites, www.arisebank.com and www.arisecoin.com.

## II.   ARGUMENT AND AUTHORITIES

### A.   The Court Should Issue an *Ex Parte* Restraining Order, Preliminary Injunction, and Other Equitable Relief in Order to Halt Defendants' Ongoing Fraud, Maintain the Status Quo, and Protect Investors From Further Harm

#### 1.   *A Special Standard Applies to SEC Requests for Injunctions and Asset Freezes.*

Federal courts have broad equitable powers enabling them to fashion appropriate remedies necessary to grant full relief, including injunctions and asset freezes. *SEC v. Blatt*, 583 F.2d 1325, 1335-1336 (5th Cir. 1978). Rule 65(b) of the Federal Rules of Civil Procedure empowers a court to grant an *ex parte* temporary restraining order ("TRO") to prevent immediate and irreparable injury, loss, or damage. FED. R. CIV. P. 65(b). Unlike private litigants, however, the SEC is not required to show a risk of irreparable injury, loss, or damage to obtain a TRO.[6] *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975); *SEC v. Unifund Sal*, 910 F.2d 1028, 1036 (2nd Cir. 1990). Rather, the SEC is entitled to entry of temporary and preliminary injunctive relief upon a showing that it is likely to succeed on the merits of its case. *See* 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d); *see also SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir.

---

[6] "[T]he rationale for this rule is readily apparent. It requires little elaboration to make the point that the SEC appears in these proceedings not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws. Hence, by making a showing required by statute that the defendant 'is engaged or about to engage' in illegal acts, the SEC is seeking to protect the public interest, and 'the standards of the public interest, not the requirements of private litigation, measure the propriety and need for injunctive relief.'" *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d at 808-809 (quoting *Hecht v. Bowles*, 321 U.S. 321, 331 (1944)).

*SEC v. AriseBank, et al.*
Brief in Support of Motion for TRO, Asset Freeze, and Other Relief
Page 5

1998).

Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] authorize the SEC to seek and direct the courts to enter "a permanent or temporary injunction or restraining order" upon a "proper showing" that the defendant "is engaged or is about to engage" in violations of the securities laws.  In the Fifth Circuit, the SEC makes a proper showing and "is entitled to prevail when the inferences flowing from the defendant's prior illegal conduct, viewed in light of present circumstances, betoken a [']reasonable likelihood['] of future transgressions."  *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. 1981).

To determine whether there is a "reasonable likelihood" of future violations, the court analyzes: (1) the nature of the past violation; (2) the defendant's present attitude; and (3) objective constraints on (or opportunities for) future violations of the securities laws ("*Zale* factors").  *Id.*  "Such factors include the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of *scienter* involved, the sincerity of the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations."  *Id.*  When the SEC has established a *prima facie* showing of violations and the likelihood that such violations will continue, issuance of a preliminary injunction is appropriate.  *SEC v. First Fin. Group of Tex.* 645 F.2d 429, 434-35 (5th Cir. 1981); *SEC v. United Fin. Group, Inc.*, 474 F.2d 354, 358 (9th Cir. 1973); *SEC v. Keller Corp.*, 323 F.2d 397, 402-03 (7th Cir. Ind. 1963).

Here, the *Zale* factors strongly favor entry of a TRO and preliminary injunction against each Defendant.  Their violations to date are widespread, egregious, and ongoing.  The Defendants claim to have raised over $600 million and intend to raise $1 billion.  As detailed

above, these funds are being raised illegally—both through unregistered securities offerings and by using fraudulent offering materials. And they have acted with a high degree of *scienter*, employing a variety of blatantly false claims while in violation of the C&D Order. Finally, the Defendants have not recognized the wrongful nature of their conduct. To the contrary, they continue to engage in the illegal conduct to this day.

**B.    The SEC is Likely to Succeed on the Merits of Its Case.**

As demonstrated in the SEC's attached evidentiary appendix, the SEC will likely succeed in proving that the Defendants are illegally: (1) offering and selling unregistered securities, and (2) engaging in a fraudulent securities offering.

### 1.    *The Defendants are Illegally Offering and Selling Unregistered Securities.*

The AriseCoins being offered by the Defendants constitute securities under Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act because they are "investment contracts." In *SEC v. W.J. Howey Co.*, the Supreme Court held that an investment contract exists where (1) a person invests his or her money, (2) in a common enterprise, and (3) with the expectation of profits derived solely from the efforts of the promoter or a third party. 328 U.S. 293, 298-99 (1946). The definition of a security "embodies a flexible rather than static principle, one that is capable of adaptation" and requires an analysis into the substance rather than the form of the transaction with an emphasis on economic reality. *Howey*, 328 U.S. at 298-99; *see also United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 850 (1975); *SEC v. Edwards*, 540 U.S. 389 (2004).

Here, the AriseCoins meet the *Howey* test. First, investors pay money to AriseBank to purchase the AriseCoins.[7]  Second, they invested in a "common enterprise" because the

---

[7] As noted above, AriseCoin can be bought using either U.S. dollars or a virtual currency. Either way, this is an investment of money. *See SEC v. Shavers*, No. 4:13-CV-416, 2014 WL 4652121, at *1 (E.D.

investors' fortunes are dependent on the efforts and expertise of the Defendants—which is sufficient to satisfy the "broad vertical commonality" required in the Fifth Circuit. *See Long v. Shultz Cattle Company, Inc.*, 881 F.2d 129, 140 (5th Cir. 1989); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 479 (5th Cir. 1974). Third, the investors' role in the investment program is entirely passive, and they expect to realize profits based solely on the "entrepreneurial or managerial" efforts of the Defendants. *Forman*, 421 U.S. at 852 (1975) (citing *Howey*, 28 U.S. at 301).[8]   Since all three prongs are met, the AriseCoins are securities by virtue of being "investment contracts."

Since the AriseCoins are securities, they must be registered under Sections 5(a) and 5(c) of the Securities Act. Those provisions prohibit any person from selling a security through interstate commerce: (1) "[u]nless a registration statement is in effect as to [such] security," or (2) from offering to sell or offering to buy a security "unless a registration statement has been filed as to such security." To establish a Section 5 violation, the SEC must prove: "first, that no registration statement was in effect as to the securities; second, that the defendant sold or offered to sell these securities; third, that there was a use of interstate transportation, or communication, or of the mails in connection with the sale or offer of sale." *SEC v. Cavanagh*, 1 F. Supp. 2d 337, 361 (S.D.N.Y.), aff'd, 155 F.3d 129 (2d Cir. 1998). "Liability does not require that the defendant actually passed title of the security. Any person who 'engaged in steps necessary to

---

Tex. Sept. 18, 2014) (investment of Bitcoin, a virtual currency, meets the first *Howey* prong); *see also Uselton v. Commercial Lovelace Motor Freight, Inc.*, 940 F.2d 564, 574 (10th Cir. 1991) ("[T]he 'investment' may take the form of 'goods and services,' or some other 'exchange of value'." (citations omitted))

[8]  In *Williamson v. Tucker*, the Fifth Circuit noted that analysis of this factor turned on whether the efforts of others "are undeniably significant ones [. . .] which affect the failure or success of the enterprise." 645 F.2d 404, 418 (5th Cir. 1981), *citing SEC v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476 (9th Cir. 1973). That is clearly the case here—where the efforts of Rice and Ford, the "visionaries" and "brains" behind AriseBank—are singularly important to the success or failure of the enterprise.

the distribution' of the unregistered security is liable under Section 5." *SEC v. Tecumseh Holding Corp.*, 2009 WL 4975263, \*3 (S.D.N.Y. Dec. 22, 2009) (quoting *SEC v. Chinese Consol. Benev. Ass'n*, 120 F.2d 738, 741 (2d Cir.1941)).

As detailed above, AriseBank offers and has sold securities to the general public—$600 million to date, if its claims are true.  These offers and sales have been made using interstate commerce—including the internet and the communications infrastructure underlying it.  *See, e.g. SEC v. Tropikgadget FZE*, 2017 U.S. Dist. LEXIS 25495 (D. Mass. Feb. 23, 2017) (citing *United States v. Chiaradio*, 684 F.3d 265, 281 (1st Cir. 2012) for the proposition that anything that travels via the internet travels in interstate commerce.)  No registration statement is or has been filed while these securities have been offered or sold.   Nor has one been in effect.   As a result, AriseBank has violated and continues to violate Section 5(a) and 5(c) of the Securities Act.

## 2.     *The Defendants are Conducting a Fraudulent Securities Offering.*

The Defendants are engaged in a fraudulent securities offering that violated the antifraud provisions of the federal securities laws.  They have violated and continue to violate Securities Act Section 17(a)(2) [15 U.S.C. § 77q(a)(2)] and Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].   Securities Act Section 17(a) provides in relevant part:

> It shall be unlawful for any person in the offer or sale of any securities [. . .] by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—
> [. . .]
>    (2) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading[.]

15 U.S.C. § 77q(a).

Similarly, Exchange Act Section 10(b) makes it unlawful to use or employ any

manipulative or deceptive device in connection with the purchase or sale of any security in contravention of prescribed SEC rules. 15 U.S.C. § 78j(b). Exchange Act Rule 10b-5(b) further specifies:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> [. . .]
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading[.]

17 C.F.R. § 240.10b-5(b).

A statement or omitted fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making an investment decision. *SEC v. Seghers*, 298 Fed. Appx. 319, 328 (5th Cir. 2008); *see also SEC v. Gann*, 565 F.3d 932, 937 n.17 (5th Cir. 2009). Representations and/or omissions that go to the financial prospects of a company, the experience of its principals, and litigation history—are material as a matter of law. *See, e.g., SEC v. Helms, et al*, 2015 WL 5010298, *14-15 (W.D. Tex. Aug. 21, 2015) (citing various cases).

Violations of Section 10(b) and Rule 10b-5(b) require showing *scienter*—a mental state embracing intent to deceive, manipulate, or defraud. *Aaron v. SEC*, 446 U.S. 680, 691, 697 (1980). To support a claim under Securities Act Sections 17(a)(2), however the SEC need only show that the Defendants acted negligently. *Id.* *Scienter* is established by showing that the defendant acted intentionally or with severe recklessness. *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir. 1981). A company's *scienter* can be imputed from its management and individuals who control it. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1089, n.3 (2d Cir. 1972); *see, e.g., Southland Sec. Corp. v. INSpire Ins. Solution, Inc.*, 365 F.3d 353, 366 (5th

*SEC v. AriseBank, et al.*
Brief in Support of Motion for TRO, Asset Freeze, and Other Relief
Page 10

Cir. 2004).

Finally, to successfully make a claim under Rule 10b-5(b), the SEC must show that the Defendant is "maker" of the false statement (or the omission stemming from the false statement). A defendant "makes" a statement if the defendant is "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "Attribution within a statement or implicit from surrounding circumstances is strong evidence" that the party to whom it is attributed is its maker. *Id.* at 142-43.

Each Defendant has violated or is violating the law by making statements in the offer and sale of securities (or in connection with the sale of securities) that are materially false or misleading. The Defendants are misleading investors about:

- AriseBank's purchase of an FDIC-insured bank and its ability to offer FDIC-covered products—claiming that the purchase would give AriseBank "full financial capabilities of traditional banking united with the power and platform of real-time cryptobanking," when in fact AriseBank has not agreed to purchase an FDIC-insured bank and likely cannot do so due to Rice's and Spencer's criminal histories;

- AriseBank's partnership with Marqeta and its ability to offer VISA-branded products—claiming that this partnership will "change the very foundation of how we spend our money," when in fact there is no such partnership and Marqeta has demanded that AriseBank cease and desist from using its name or trademarks; and

- the professional background and expertise of AriseBank's principals, including Rice—by portraying him as a visionary who is deeply involved in his community,

when in fact he has an extensive criminal history and is currently on probation for committing two felonies.

Each of these statements is material, since they go to the financial prospects of the company, the experience of its principals, and litigation history. *Helms, et al*, 2015 WL 5010298, \*14-15 (W.D. Tex. Aug. 21, 2015) (citing various cases). Indeed, it is common sense that a reasonable investor would want to know he or she is investing in: (1) a company that cannot deliver on the basic products and services that it touts, and (2) is run by principals who have lengthy criminal histories. In addition, each Defendant is a maker of the misstatements—which they had the ultimate authority over and/or which are attributed to them. *Janus*, 564 U.S. at 142-43 (2011).

Finally, the Defendants acted knowingly, recklessly, or—at a minimum—negligently. Each Defendant undoubtedly knows that AriseBank has not acquired an FDIC-insured bank and that there is no business relationship with Marqeta. And while it is unbelievable to think otherwise, the cease-and-desist letters from the FDIC and Marqeta's lawyers remove any doubt that the Defendants know their statements to be false. Finally, Rice certainly knows about his own criminal background, and his knowledge is imputed to AriseBank since he is its co-founder and CEO. Likewise, Ford either knows this information or is reckless or negligent in not knowing it—since it is publicly-available.[9]

### 3.  *The Defendants' Misconduct is Ongoing and Will Continue.*

Among the factors to be considered in assessing the likelihood that defendants will repeat their wrongdoing are (1) the character of the violation, (2) the degree of *scienter* involved, and (3) whether a defendant has acknowledged the wrongfulness of his conduct and given sufficient

---

[9] As detailed above in our Section 5 analysis, the offers were made in interstate commerce.

assurances that it will not be repeated. *See SEC v. Savoy Industries, Inc.*, 587 F.2d 1149, 1168 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 913 (1979). A likelihood of future violations can also be inferred from past violations. *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).

Here, Defendants have demonstrated a high probability that they will continue violating the federal securities laws unless they are restrained and enjoined. This case does not involve an isolated incident. If they are to be believed, the Defendants have raised $600 million and intend to raise $1 billion. Further, the violations are egregious and exhibit a high degree of *scienter*. Finally, Defendants have not acknowledged the wrongfulness of their conduct. To the contrary, the Defendants continue to fraudulently raise funds to this day and have unequivocally stated their belief that they are not subject to regulation by the SEC. In Rice's own words, the Defendants are "geared up for the coming fight with the SEC." For all these reasons, a TRO is necessary and appropriate.

## C.     The Court Should Appoint a Receiver Over AriseBank.

The power of the district court to appoint a receiver to marshal and preserve assets and perfect property rights is well-established. *SEC v. First Financial* Group, 645 F.2d 429, 438 (5th Cir. 1981). *See also* 12 C. Wright, A. Miller & R. Marcus, "Federal Practice & Procedure" §2983 at 23-24 (2d ed. 1997). An evidentiary hearing is not required on Plaintiff's request to appoint a receiver where the record discloses sufficient facts to warrant such an appointment. *Bookout v. Atlas Fin. Corp.*, 395 F. Supp. 1338, 1342 (N.D. Ga. 1974), *aff'd*, 514 F.2d 757 (5th Cir. 1975).

The evidence presented here establishes that Defendants—acting through AriseBank— have engaged in a wide-ranging and egregious fraud that may have raised hundreds of millions of dollars. Under these circumstances, the appointment of a receiver to marshal, conserve, and

hold AriseBank's property and other property traceable to the fraud is essential to providing meaningful recovery for the scheme victims.

**D.     The Court Should Issue an Order Freezing and Repatriating Defendants' Assets, Requiring Document Preservation, Requiring Sworn Accountings, Permitting Alternative Service, Permitting Expedited Discovery, and Requiring Rice and Ford to Surrender their Passports.**

Federal courts have broad equitable powers enabling them to fashion appropriate ancillary remedies necessary to grant full relief. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103-4 (2d Cir. 1972); *SEC v. Blatt*, 583 F.2d 1325, 1335-1336 (5th Cir. 1978).

The Court should freeze and order the repatriation of the Defendants' assets based on the misconduct described above. Such an order is appropriate to prevent dissipation pending an assessment of the assets' value and liquidity and their return to investors. *See, e.g., SEC v. Manor Nursing Centers, Inc.*, 458 F.2d at 1106. The Defendants' wrongdoing amply demonstrates that they should not be entrusted with investor funds.

An asset freeze is appropriate to assure the Defendants' satisfaction of whatever equitable relief the Court ultimately may order. *Id.*; *Commodity Futures Trading Com. v. Muller*, 570 F.2d 1296, 1300 (5th Cir. 1978). The Court's power to freeze assets extends to accounts over which a defendant exercises effective control, even if the ill-gotten gains have not been traced to the account. *See SEC v. Grossman*, 887 F. Supp. 649, 661 (S.D.N.Y. 1995). This is because an asset freeze "facilitate(s) enforcement of any disgorgement remedy that might be ordered" and may be granted "even in circumstances where the elements required to support a traditional SEC injunction have not been established." *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990). Courts recognize that an asset freeze is sometimes necessary to ensure that a future disgorgement order will have effect. *See, e.g., U.S. v. Cannistraro*, 694 F. Supp. 62, 71 (D.N.J. 1988), *aff'd in part, vacated in part on other grounds*, 871 F.2d 1210 (3d Cir. 1989); *SEC v. Vaskevitch*, 657 F.

Supp. 312, 315 (S.D.N.Y. 1987); *SEC v. R. J. Allen & Assocs., Inc.*, 386 F. Supp. 866, 881 (S.D.
Fla. 1974).

To obtain an asset freeze, the SEC need not show a reasonable likelihood of future
violations. *Commodity Futures Trading Com. v. Muller*, 570 F.2d at 1300. Rather, it need only
present a *prima facie* case that a violation of the securities laws has occurred. *See Unifund SAL*,
910 F.2d at 1040-41; *see also* 15 U.S.C. §§ 77t(b) and 78u(d)(1). The SEC's burden is lower
than that of a preliminary injunction because an asset freeze only preserves the *status quo*.
*Unifund SAL*, 910 F.2d at 1039. As set forth above, the Defendants' have engaged in repeated
violations of the federal securities laws. Hence the Court should freeze Defendants' assets to
ensure the best and most complete recovery for the victims of their fraud.

The Court should also enter an order prohibiting the movement, alteration, and
destruction of books, records, and accounts to prevent destruction of documents before the SEC's
claims can be adjudicated. To more fully ascertain the extent of the Defendants' misconduct, the
Court should order the Defendants to submit an interim accounting on an expedited basis and
order broad expedited discovery in the case, in anticipation of a hearing on the SEC's request for
a preliminary injunction. These orders will assure that whatever equitable relief might ultimately
be granted is available and meaningful. *See R. J. Allen & Assocs., Inc.*, 386 F. Supp. at 881.

Finally, the Court should order that Rice and Ford surrender their passports. This is
necessary both to prevent them from fleeing the country and to facilitate the transfer of
information and documents to the Receiver—which will allow him to carry out his duties.
Courts have ordered this relief in cases involving similar conduct. *See, e.g., SEC v. Resource
Development Intern. LLC*, 160 Fed.Appx. 368, 369 (5th Cir. 2005).

E.    *Ex parte* **Treatment is Necessary.**

The accompanying Rule 65 certification and supporting evidentiary appendix show that immediate and irreparable injury, harm, or damage will result to the SEC and AriseBank investors before the Defendants can be heard in this case.  As reflected in the Complaint, the SEC seeks an order requiring the Defendants to disgorge an amount equal to the illegal profits and other benefits they received as a result of the violations.  If Defendants receive notice of this action before the requested ancillary relief is entered, then they will have the opportunity to dissipate and/or place outside the Court's jurisdiction assets they obtained from their victims. They will also have an opportunity to destroy, alter, or mutilate evidence needed to determine the full scope of the fraud.

Such actions will create irreparable injury to the SEC and Receiver by preventing them from collecting all funds and assets they are entitled to collect.  It will create further irreparable injury by greatly diminishing the SEC's law-enforcement goal of returning assets acquired in this fraud to their rightful claimants through the appointment of a receiver.

III.    **CONCLUSION**

Based on the foregoing facts and for the reasons set forth above, the SEC respectfully requests that the Count enter orders granting the Motion and providing the relief requested.

January 25, 2018                                Respectfully submitted,

                                                CHRIS DAVIS
                                                Texas Bar No. 24050483
                                                davisca@sec.gov
                                                TIMOTHY L. EVANS
                                                evanstim@sec.gov
                                                B. DAVID FRASER
                                                Texas Bar No. 24012654
                                                fraserb@sec.gov

United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX 76102-6882
Ph: 817-978-3821
Fax: 917-978-4927

ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION